May it please the court, Lewis Gordon on behalf of the petitioner Hamood Youssef Hamood, I'd like to reserve two minutes for rebuttal. That's your full time, so you'll have to help keep track of it. Okay, thank you. This case presents an unusual scenario in that the immigration judge, the government and the petitioner all agree that the petitioner will be tortured upon his return to Lebanon. However, we disagree as to whether that torture and what happened to him in the past would be on the basis of a protected ground. In my opinion, the immigration judge made an error simply by viewing this case as a matter of general recruitment, such as we've seen in other precedent decisions, Elias Sicarius, matter of R.O. But this is not a case of simple recruitment. The petitioner was specifically targeted for recruitment because he was a Druze with access to the area of southern Lebanon that borders Israel and was at that time controlled by Israel. And because he had access to that area, he, as the expert witness in the case has noted, was an optimal recruit. But that doesn't, I don't understand how he's being persecuted on account of his religion. It sounds to me like we want to recruit this guy because he will make an effective spy for us because he can freely travel under Israeli defense forces who are occupying that region because he is a Druze. Okay, the Druze religion requires them to have loyalty to the country they live in. Druze in Israel are loyal to the Israeli government. He has relatives who are loyal to the Israeli government and at that time in southern Lebanon, his ancestral village. But that just bolsters his value as a spy. I mean, that makes it easier for him to move around if the occupying forces think that because he's Druze and because a part of the country is occupied by Druze, he's got a reason to be there. But he wouldn't be targeted for that recruitment if he wasn't a Druze. But it's not, I guess the difference is, I don't understand, that's not persecution. That's not, it's not like the case we had in Armenia where we were sending the Armenians to the front lines because they were Armenians and we wanted to serve them up as cannon fodder. We want this guy to go to southern Lebanon because he can move freely and presumably report on the movements of the Israeli forces. And that will help the cause. That will help the cause, but as I say, it would not be if he wasn't a Druze. Well, it could have been. Suppose that he had family there and was given a dispensation to travel back and forth. He would be subject to the same kind of targeting, wouldn't he? Well, not necessarily because one of the primary goals of Hezbollah, as testified by Professor Nabulsi in the case, is that they want to separate the Druze and use that as a political attack against Israel. So, therefore, specifically by targeting him because he was a Druze, he was an optimal recruit more than someone who simply had access to that area. Now, I also want to raise, want to discuss the political issue. Well, before we get to that, I don't understand the argument. I thought you said your expert testified that the cultural trait of the Druze is to be loyal to the government in the territory that they occupy. So I'm just not following the reasoning. Well, part of the Druze faith requires them to be loyal. In his particular situation, he's being targeted by attempt to get at that faith, to break the ties between Druze in southern Lebanon and ties to Druze in Israel. But how do we know that? How do we know that? Yeah, with regard to the recruitment of this man. As I understand the record, he gets approached by the guy at the Toyota dealership because he's Druze, and they try to recruit him. But there isn't any discussion of we want you to be a wedge here, to drive a wedge between the Druze population in southern Lebanon and the Israelis. Well, but Professor Nipulsi has testified to the whole Hezbollah campaign, and that when they've done that, when they've been successful in recruiting a Druze, that they've caused grave damage, and that the expert witness has testified to that point. I still don't understand the persecution. I understand why he's valuable. I understand why it would be great if we could get this guy into southern Lebanon, and if we can convert him to our cause, he'll be able to go freely among the defense forces and carry bombs or whatever it is they wanted him to do. But that's not persecution of his religious belief. Well, because the targeting of him is solely based on his religion. The targeting is the persecution to target someone and force them to undertake spy missions and undertake terrorist activities, which are contrary to the basic norms of international law. That's where the persecution goes on, because he's being targeted as a Druze. There's no other reason to target him. And so when he says no and gets punished, that's persecution on account of religion. Now, there's another point that I really do want to make, and that's Hezbollah is on the State Department terrorist list, and Immigration notes it's a terrorist group. And case law in this circuit in Barraza Rivera, Ramos Vazquez, has noted that refusal to engage in acts that are contrary to basic humanitarian law could be grounds for asylum. But in the cases, the other precedent cases, Elias Sicarius, Matter of O, the Tecum, the case that's cited by the government, none of those groups were on the State Department terrorist list. The FMLN in Elias Sicarius was never on the State Department terrorist list, and there's no Guatemalan groups that are on it now, and I don't believe that the nameless guerrillas in the other cases could have been on the State Department terrorist list. Hezbollah is there, and it's there for a specific reason. And his refusal, and he said he knew Hezbollah was a terrorist group, he didn't want to be a part of it or engage in any of those activities. So I believe that there's a political opinion there in refusing to engage in those activities with Hezbollah. It's not the Supreme Court in Elias said that refusing the recruitment of, was it FMLN? FMLN. In that case, they rejected the argument that his refusal to join them was because of his political allegiance to... In that specific case, they didn't say that it can't be in any case. But the whole argument that was made to the Supreme Court was that constitutes persecution on grounds of political... Per se. And they said no. And they said no, it's not per se, but they didn't leave it open that it can't be. They said in that particular case, Elias Zakaria's, it's not. In this particular case, it is a different type of recruitment. And FMLN was never been on the terrorist... There's a big distinction between a group that's on the State Department terrorist list. In fact, if Mr. Hammoud... Can you explain, I'm looking at Justice Scalia's opinion at page 483 at 502 U.S. And he says Elias Zakaria still has to establish that the record also compels the conclusion that he has a well-founded fear that the guerrillas will persecute him because of that political opinion rather than because of his refusal to fight with them. Why doesn't that directly control the facts in this case? As I said, first of all, FMLN was never on the terrorist list. There's nothing in Elias that the Supreme Court says about that fact. That fact doesn't exist in the opinion. Exactly. It doesn't exist in that case. And that's what makes this... So this is an argument that goes beyond obiter dicta. It's an argument that's based on what Justice Scalia could have said but didn't. There was no such list of State Department terrorists at that time, is my understanding. That came in in 1960. So you would say it would have been a different case. It would have been a different case. And if Mr. Hammoud had, even as so much as distributed flyers for Hezbollah, he'd be barred from asylum because he was a terrorist. Yet in the reversal, he can't get asylum because he refused to engage. I think we understand. We've done a very poor job of keeping track of your time because you're in the red. But if we have any questions, we'll let you answer them. Thank you. May it please the Court, Christina Peres-Gondola for the Attorney General. Mr. Hammoud's problems stemmed from the fact that his co-worker, or he told his co-worker, that he had permission to travel to southern Lebanon, not his religion. The record does not compel a finding that his religion has anything to do with his problems in Lebanon. Mr. Hammoud was born and lived and worked in L.A. It's a town 12 miles east of Beirut. It's not in southern Lebanon. And even assuming that these problems were on account of his religion, it's well established in the record that in May of 2000, Hezbollah took over the south of Lebanon and Mr. Hammoud's services would no longer be needed as a spy or to get access to southern Lebanon. In addition, his family continues to live in Lebanon. They live in L.A. And his father's family continues to live in the south of Lebanon, apparently unharmed. Are they all Druze? Yes. And that's the thing. That's been established in the record that Mr. Hammoud is a Druze. The Druze are a distinct ethnic or religious group. But the nexus to his problems just has not been established. And I just wanted to respond to a few of the petitioner's counsel's arguments. I think in his reliance on Elias Zacharias, it's true, these cases are all fact specific. And it is possible that attempts by a guerrilla group to recruit someone can be on account of a protected ground. But just the recruitment alone just doesn't meet that on account of standard. Well, if you have a group that is targeting people of a certain religion to join them, and then if they don't, persecuting them, beating them, kidnapping them, locking them up, maiming them, because they refuse to join up, and it's because they want that religion in their group, that's persecution on account of religion, isn't it? Yes, Judge Schroeder, that would be. But that has not been established in the record here. It just doesn't compel that finding. So if I understand it, they wanted him to sign up not because he was a Druze, but because he was able to travel back and forth. Yes, Your Honor, and to say that he was able to travel back and forth, he testified that he had been to this town called Elmeri twice. So it's not like he was a frequent visitor to southern Lebanon. And this didn't come across, I think, in the Immigration Judges of the Board's decision. He's not from southern Lebanon. His father's family was from the town of Elmeri. So, you know, it sounds to me he was chatting with his co-worker one day, happened to mention or maybe brag or, you know, just say, oh, I've got family in southern Lebanon, I can go there. That was the reason for this Hezbollah person wanting to recruit Mr. Hammoud. And also, I would just add, with respect to the immigration judge's grant of protection under the torture convention, it means that there's a possibility of torture. And it doesn't mean that it's certainly that it's going to happen. And, again, the issue here is in southern Lebanon. And, you know, if the petitioner were to avoid that area, according to the record here, it doesn't seem like he would have a problem. If there are no further questions, the respondent asks the Court to affirm the Board's decision and to deny this petition for review. Okay. That's a sad case. Are there any further questions? Thank you. The matter just argued is submitted for decision. We'll hear the next case, Salazar v. Maywood. I understand that this army of counsel that is listed here, that you've done some winnowing out, and so we're not going to hear from all of you. We appreciate that.
judges: Jarvey, Schroeder, Tallman